UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ORLANDO SMITH, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. H-09-2132 |
| | § | |
| INTERNATIONAL BUSINESS MACHINES | § | |
| CORP., *et al*, | § | |
| | § | |
| Defendants. | § | |

## OPINION AND ORDER

Pending before the Court is Defendant International Business Machines Corporation's ("IBM") Motion for Summary Judgment (Doc. 34), as well as Plaintiff Orlando Smith's ("Smith") Response (Doc. 39) and IBM's Reply (Doc. 40). Upon review and consideration of this motion, the response and reply thereto, the relevant legal authority, and for the reasons explained below, the Court finds that Defendant's motion should be granted.

I.  Background and Relevant Facts

This is a sexual harassment in employment case. In the 1980s, Orlando Smith had an intimate relationship with Ruby Newton ("Newton"). (Smith Dep., Doc. 34-3 at 10–13.) In early April 2007, Smith applied for a job with OAO Technology Solutions, Inc. ("OAO"). (*Id.*, Doc. 39-1 at 17–18; OAO offer letter, Doc. 34-1 at 31.) OAO is a staffing company providing temporary employees to other companies, including IBM. (Claver Dep., Doc. 39-2 at 13.) Newton worked for IBM and recommended OAO hire Smith. (Smith Dep., Doc. 39-1 at 17–18.) On April 4, 2007, OAO hired Smith as a project manager. (*Id.*, Doc. 34-3 at 35; OAO offer letter, Doc. 34-1 at 31.)

On April 11, 2007, IBM contracted with OAO for Smith's services. (Purchase order,

Doc. 34-1 at 33.)  Smith's work for IBM was governed by the terms of Technical Services Agreement ("Services Agreement") and Statement of Work ("SOW") between IBM and OAO. (Services Agreement, Doc. 34-2 at 5; SOW, Doc. 34-2 at 13.)  The Services Agreement specified that Smith is an independent contractor and that no agency relationship existed between IBM and OAO's employees.  (Services Agreement § 12, Doc. 34-2 at 9.)  Smith's project could be terminated by IBM at any time with or without cause.  (*Id.* § 3.3.)

Pursuant to the Services Agreement, OAO was responsible for Smith's "supervision, control, compensation, withholdings, health, and safety," as well as workers' compensation and employer liability insurance required by local law.  (*Id.* §§ 12.0, 13.0.)  OAO was also responsible for "exercising full supervisory authority of all day-to-day employment relationship decisions," including Smith's "wages, hours, terms and conditions of employment, hiring, discipline, performance evaluations, termination, counseling, and scheduling."  (SOW § 5.2, Doc. 34-2 at 14.)

While at IBM, Smith reported to Ruby Newton, who reported to Mitch Claver ("Claver"), who in turn reported to Ron Forrest.  (Smith Dep., Doc. 34-3 at 11–12; Claver Aff., Doc. 34-1 at 17–18; Claver Dep., Doc. 34-1 at 9.)

In October 2007, Ron Forrest told Claver to reduce his project's workforce by three independent contractors.  (Claver Dep., Doc. 34-1 at 9.)  Claver selected Smith as one of the three because he was the most junior member.  (*Id.* at 10–11.)  Newton was not involved in Claver's decision.  (*Id.* at 18.)

On December 14, 2007, Smith's contract at IBM ended.  (*Id.* at 12.)  OAO tried to find other assignments for Smith.  (Smith Dep., Doc. 34-3 at 54, 58.)

On January 24, 2008, Smith e-mailed his previous supervisors alleging Newton had

sexually harassed him.  (Smith e-mails, Doc. 34-4 at 20–23; Smith Dep., Doc. 39-1 at 21–24.)

Smith had recorded sexually explicit conversations with Newton.  (Smith Dep., Doc. 39-1 at 35–

36.)

On July 6, 2009, Smith filed the instant suit bringing claims against IBM and OAO for

sexual harassment, retaliation, and violations of Title VII of the Civil Rights Act of 1964, as

amended, 42 U.S.C. § 2000e.  (Pl.'s Original Compl., Doc. 1.)  On October 20, 2010, Smith and

OAO settled.  (Pl.'s Mot. for Partial Dismissal, Doc. 26; Order of Partial Dismissal, Doc. 30.)

IBM now moves for summary judgment.  (Doc. 34.)

## II.  Standard of Review

A party moving for summary judgment must inform the court of the basis for the motion

and identify those portions of the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, that show that there is no genuine issue as

to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R.

Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The substantive law governing

the suit identifies the essential elements of the claims at issue and therefore indicates which facts

are material.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The initial burden falls

on the movant to identify areas essential to the nonmovant's claim in which there is an "absence

of a genuine issue of material fact."  *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir.

2005).  If the moving party fails to meet its initial burden, the motion must be denied, regardless

of the adequacy of any response.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)

(*en banc*).  Moreover, if the party moving for summary judgment bears the burden of proof on an

issue, either as a plaintiff or as a defendant asserting an affirmative defense, then that party must

establish that no dispute of material fact exists regarding all of the essential elements of the claim

or defense to warrant judgment in his favor. *Fontenot v. Upjohn*, 780 F.2d 1190, 1194 (5th Cir. 1986) (the movant with the burden of proof "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor") (emphasis in original).

Once the movant meets its burden, however, the nonmovant must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323–24. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citing *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). Instead, the nonmoving party must produce evidence upon which a jury could reasonably base a verdict in its favor. *Anderson*, 477 U.S. at 248; *see also DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005). To do so, the nonmovant must "go beyond the pleadings and by [its] own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial." W*ebb v. Cardiothoracic Surgery Assocs. of N. Tex., P.A.*, 139 F.3d 532, 536 (5th Cir.1998) (overruled on other grounds by *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2414 (2006)). Unsubstantiated and subjective beliefs and conclusory allegations and opinions of fact are not competent summary judgment evidence. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *Grimes v. Tex. Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 139–40 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992), *cert. denied*, 506 U.S. 825 (1992). Nor are pleadings summary judgment evidence. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1046 (5th Cir. 1996) (citing *Little*, 37 F.3d at 1075). The nonmovant

cannot discharge his burden by offering vague allegations and legal conclusions. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 889 (1990). Nor is the court required by Rule 56 to sift through the record in search of evidence to support a party's opposition to summary judgment. *Ragas v. Tennessee Gas Pipeline Co*., 136 F.3d 455, 458 (5th Cir. 1998) (citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).

Nevertheless, all reasonable inferences must be drawn in favor of the nonmoving party. *Matsushita*, 475 U.S. at 587–88; *see also Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). Furthermore, the party opposing a motion for summary judgment does not need to present additional evidence, but may identify genuine issues of fact extant in the summary judgment evidence produced by the moving party. *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 198–200 (5th Cir. 1988). The nonmoving party may also identify evidentiary documents already in the record that establish specific facts showing the existence of a genuine issue. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990). There is a "genuine" issue of material fact if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

## III. Discussion

Under Title VII, Smith must show that IBM was his employer. *See Skidmore v. Precision & Packing Inc.*, 188 F.3d 606, 617 (5th Cir. 1999) (reversing judgment against defendant because it was not employer of plaintiff). Smith contends both IBM and OAO were his employers. (Pl.'s Original Compl. ¶¶ 3, 8–10, Doc. 1 at 2–3.) IBM denies it employed Smith. (Doc. 34 at 16.) OAO conceded it employed Smith. (OAO's Original Answer ¶¶ 7–10, Doc. 10 at 6.)

Courts use two tests to evaluate whether a defendant is the plaintiff's employer for the purposes of Title VII.  The first test, known as the *Trevino* test, ascertains when distinct entities may be considered integrated as a single employer.  *Garcia v. Elf Atochem N. Am.*, 28 F.3d 446, 450 (5th Cir. 1986); *Trevino v. Celanese Corp.*, 701 F.2d 397 (5th Cir. 1983).  The *Trevino* test considers the "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control."  *Trevino*, 701 F.2d at 404.  "The second of these factors has traditionally been most important, with courts refining their analysis to the single question, '[w]hat entity made the final decisions regarding employment matters related to the person claiming discrimination?'"  *Schweitzer v. Advanced Telemarketing Corp.*, 104 F.3d 761, 764 (5th Cir. 1997) (quoting *Odriozola v. Superior Cosmetic Distribs., Inc.*, 531 F. Supp. 1070, 1076 (D.P.R. 1982)).

The second test, the hybrid test, was "developed as a means of determining when plaintiffs could be considered employees of business entities, not to ascertain if different entities were so integrated as to constitute a single employer of that plaintiff."  *Schweitzer*, 104 F.3d at 764.  The tests "should not be used interchangeably."  *Id*.  When one business entity is classified as an employer under the hybrid test, but questions remain whether a second business entity is sufficiently connected to the first, the *Trevino* test is applied.  *Id.*  There is a "strong presumption" that separate corporations are distinct entities.  *See Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 778 (5th Cir. 1997).  Because OAO conceded it employed Smith, the *Trevino* test is appropriate to determine whether IBM can also be considered Smith's employer for the purposes of Title VII.

Smith concedes that OAO and IBM do not share "any common ownership or financial control."  (Doc. 39 at 16.)  Although Smith argues that Newton recommended him to OAO for

the IBM project, OAO made the final employment decision.  (OAO offer letter, Doc. 34-1 at 31.)

Applying the *Trevino* test, the Court finds IBM was not Smith's employer for the purposes of

Title VII.

IV.  Conclusion

Accordingly, the Court hereby **ORDERS** that Defendant International Business

Machines Corporation's Motion for Summary Judgment (Doc. 34) is **GRANTED**.

SIGNED at Houston, Texas, this 10th day of August, 2011.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE